KAREN P. HEWITT
United States Attorney
NICOLE ACTON JONES
Assistant U.S. Attorney
California State Bar No. 231929
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5482
E-mail: nicole.jones@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CHRISTIAN PAUL RODARTE, <br><br> Defendant. | Criminal Case No. 08CR1560-JAH <br><br> **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION FOR DISCOVERY** <br><br> **TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:   July 21, 2008 <br> Time:  8:30 p.m. <br> Court:  The Hon. John A. Houston |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Nicole Acton Jones, Assistant United States Attorney, and hereby files its Response and Opposition to Defendant's discovery motion in the above-referenced case. Said response is based upon the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

//
//
//
//
//

# I

# STATEMENT OF THE CASE

On May 14, 2008, a federal grand jury in the Southern District of California returned a twelve-count Indictment charging defendant Christian Paul Rodarte ("Defendant") with Transportation of Illegal Aliens Resulting in Death, Bringing in Illegal Aliens for Financial Gain, and Transportation of Illegal Aliens, in violation of Title 8, United States Code, Section 1324 and Title 18, United States Code Section 2. On June 17, 2008, Defendant was arraigned on the Indictment and entered a plea of not guilty.

Although this case is eligible for the death penalty, on July 3, 2008, the Attorney General of the United States authorized and directed the U.S. Attorney not to seek the death penalty against Defendant.

# II

# STATEMENT OF FACTS

**A.      Defendant's Apprehension**

At approximately 6:15 p.m. on April 17, 2008, California Highway Patrol responded to a citizen's call of a vehicle accident on State Route 94 west of Forrest Gate Road near Campo, California. Upon arriving at the scene, CHP officers discovered a silver Suzuki Esteem located partway down a steep embankment off the north side of SR-94. The vehicle had incurred major damage on the driver's side. CHP officers found a male, later identified as Rodarte, trapped in the driver's seat of the vehicle. The two passengers who were seated in the left rear and middle rear seats were partially ejected, had suffered major head trauma and were pronounced dead at the scene. The decedents were later identified as Nicolas Antonio Martinez and Norma Seferina Mendoza-Alvarez. Rodarte and the five surviving passengers were transported by LifeFlight to various local hospitals.

CHP concluded that the accident happened as follows: as Rodarte entered a right curve at excessive speed and started to slide out, the vehicle began to fishtail, at which point Rodarte overcorrected and lost control, resulting in a spin out where the vehicle hit a highway advisory sign and then collided with an oak tree. There were a total of seven illegal aliens in Rodarte's vehicle – one in the front passenger seat, three in the back seat and three in the trunk. CHP reported that Rodarte was

uncooperative at the scene and did not make a statement. CHP contacted Border Patrol, who also responded to the scene.

Border Patrol Agent Desrosiers responded to the hospital to check on Rodarte. Desrosiers observed Rodarte trying to get out of his hospital bed. Desrosiers also observed Rodarte pull his IV tubes out of his arms and state "I got to get out of here!"

**B.    Material Witness Statements**

The smuggled aliens provided a consistent story of what happened on the night of April 17, 2008. The material witnesses all admitted that they were citizens of Mexico without immigration documents. Although the material witnesses varied as to what time they crossed the border, they consistently stated that after crossing the border, they walked for about 30 minutes and were led by a guide. They also stated that when they reached the highway, the guide used his phone and shortly thereafter a vehicle arrived. They also consistently described that the driver drove fast and recklessly for no apparent reason (no one heard sirens or saw anyone following them). They also consistently stated that the accident happened very quickly after they got into the vehicle. The material witnesses were to pay between $2000 and $2800 to be smuggled into the United States. Two of the material witnesses positively identified a photograph of Rodarte as the driver of the vehicle. All of the material witnesses stated that Rodarte did not cross with the group.

Material witness Fernando Martinez-Garcia stated that he knew the footguide as "El Camello." Martinez-Garcia further stated that after they arrived at the highway, he heard the footguide call someone on his phone and say "We are here." The guide then stated that a gray car was supposed to arrive and the driver would call out "El Camello" as a signal. Within ten minutes of this call, a gray car arrived and a voice called out "El Camello." Martinez-Garcia stated that he was in the trunk along with two other males.

Material witness Eugenio Rodriguez-Naranjo stated that after they arrived at the highway, the footguide used a radio and said, "We are already here," and "When are you going to pick them up?" Rodriguez-Naranjo further stated that five minutes later, a gray or white car arrived, and they all ran toward it and got in. Rodriguez-Naranjo stated that he was in the trunk.

Material witness Carmelo Gonzalez-Palacios identified the deceased male as his stepfather, Nicolas Antonio Martinez. Although the material witnesses all recalled crossing into the United States with a female, none of them knew her identity. The material witnesses did, however, recall that the female had used a cell phone during the hike and that from what they overheard, she was speaking to a family member. Two cell phones were found in the female decedent's bra. Agents reviewed the phones and called the last dialed number. This number connected to an individual who identified the female decedent as Norma Seferina Mendoza-Alvarez.

**C.    Defendant's Criminal and Immigration History**

Defendant is a United States citizen. Based on information currently available to the Government, it is believed that Defendant does not have a prior criminal record.

**III**

**DEFENDANT'S MOTIONS**

**A.    MOTION TO COMPEL DISCOVERY**

**1.    Discovery in this Matter is Current**

The Government has and will continue to fully comply with its discovery obligations. To date, the Government has provided Defendant with 200 pages of discovery, 5 DVDs and 4 CDs. The discovery produced to date includes the Border Patrol report of Defendant's arrest, the complete CHP report, the medical examiner's report, photographs of the scene from Border Patrol and CHP, Border Patrol's dispatch tape, and videotaped material witness statements. The Government is also prepared to conduct a viewing of Defendant's vehicle and property. Furthermore, the Government will request that the arresting agency preserve any evidence the Government intends to introduce in its case-in-chief or that may be material to the defense.

**2.    The Government Has and Will Continue to Comply With Its Discovery Obligations**

The Government recognizes and acknowledges its obligation pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Jencks Act, and Rules 12 and 16 of the Federal Rules of Criminal Procedure. As set forth above, the Government has complied and will continue to comply with its discovery obligations going forward.

As to exculpatory information, the United States is aware of its obligations under Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972) and will comply. The United States will also produce any evidence of bias/motive or impeachment of any of its witnesses of which it becomes aware. An inquiry pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) will also be conducted.

The United States will provide a list of witnesses at the time the Government's Trial Memorandum is filed. The grand jury transcript of any person who will testify at trial will also be produced. The United States will produce any reports of experts that it intends to use in its case-in-chief at trial or such reports as may be material to the preparation of the defense.

The United States has provided information within its possession or control pertaining to the prior criminal history of Defendant. If the Government intends to offer any evidence under Rules 404(b) or 609 of the Federal Rules of Evidence, it will provide timely notice to Defendant.

To the extent Defendant requests other specific documents or types of documents, the Government will continue to disclose any and all discovery required by the relevant discovery rules. Accordingly, the Government respectfully requests that no orders compelling specific discovery by the United States be made at this time.

**3.  The Government Objects to Requests for Discovery That Go Beyond Any Statutory or Constitutional Disclosure Provision.**
   **a.  *Impeachment Evidence***

The Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection, ability to communicate, or truth telling. The Government, however, strenuously objects to providing any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic because such information is not discoverable under Rule 16, Brady, Giglio, Henthorn, or any other Constitutional or statutory disclosure provision. [Memorandum at 5.] Nor is Defendant entitled to evidence that a prospective witness has ever engaged in a criminal act that did not result in a conviction. [Id. at 6] The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the United

1  States intends to call in its case-in-chief. An inquiry pursuant to United States v. Henthorn, 931 F.2d
2  29 (9th Cir. 1991) will also be conducted.

          ***b.    Witness Lists***

4        Defendant has been provided with a copy of the Border Patrol arrest report and CHP's report
5  which includes the names of the individuals who participated in Defendant's apprehension, as well
6  as the name of the citizen witness. Moreover, the Government will supply a tentative witness list
7  with its trial memorandum, but it objects to providing addresses. See United States v. Steele, 785
8  F.2d 743, 750 (9th Cir. 1986); United States v. Sukumolachan, 610 F.2d 685, 688 (9th Cir. 1980);
9  United States v. Conder, 423 F.2d 904, 910 (9th Cir. 1970) (addressing defendant's request for the
10  addresses of actual Government witnesses). The Government also objects to any request that the
11  United States provide a list of every witness to the crimes charged who will not be called as a United
12  States witness. "There is no statutory basis for granting such broad requests," and a request for the
13  names and addresses of witnesses who will not be called at trial "far exceed[s] the parameters of
14  Rule 16(a)(1)(c)." United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United
15  States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)). In any case, the reports produced to date
16  name the witnesses to the event in question. The Government is not aware of any additional
17  witnesses.

          ***c.    Personnel Records of Government Officers Involved in the Arrest***

19        As previously noted, the Government will comply with Henthorn and disclose to Defendant
20  all material incriminating information regarding the testifying federal government inspectors,
21  officers, and special agents. Defendant has not cited any competent authority that requires the
22  United States to produce "all citizen complaints and other related internal affairs documents."
23  [Memorandum at 8.] The case cited by Defendant, Pitchess v. Superior Court, 11 Cal.3d 531, 539
24  (1974) has been superceded by statute. See Fagan v. Superior Court, 111 Cal. App.4th 607 (2003).
25  Moreover, Pitchess involved a criminal case in which a defendant who claimed to have acted in self-
26  defense sought evidence as to the police officers' use of force on previous occasions. Pitchess, 11
27  Cal. 3d at 534, 535. Pitchess is simply inapplicable to Defendant's case.
28

In addition, Defendant's request that the specific prosecutor in this case review the personnel files is unwarranted and unnecessary. [Memorandum at 8.] Henthorn expressly provides that it is the "government," not the prosecutor, which must review the personnel files. Henthorn, 931 F.2d at 30-31. Accordingly, the United States will utilize its typical practice for review of these files, which involves requesting designated representatives of the relevant agencies to conduct the reviews. The United States opposes the request for an order that the prosecutor personally review the personnel files.

## IV

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that Defendant's motions be denied.

DATED: July 9, 2008.

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Nicole Acton Jones*
NICOLE ACTON JONES
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 08CR1560-JAH |
| Plaintiff, | |
| v. | |
| CHRISTIAN PAUL RODARTE, | CERTIFICATE OF SERVICE |
| Defendant. | |

IT IS HEREBY CERTIFIED THAT:

I, NICOLE ACTON JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Alex Landon
2. Mark Adams
3. Ciro Hernandez

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 9, 2008..

/s/ *Nicole Acton Jones*
NICOLE ACTON JONES
Assistant U.S. Attorney